Curia, per Fiiost, J.
Tenancies at will, from which tenancies from year to year are derived, are said to have been originally held at the will of the lessor — but from a very early period it has been the law, that they were held at the concurrent will of both lessor and lessee, for they might be determined at the will of either party. But the tenant could not determine the estate in the middle of a quarter, so as to defeat the lessor of his rent; nor could *348 the lessor evict the tenant at a time when he would be deprived of the fruits of his labor in the preparation of the land and culture of his crop. In Doe vs. Watts, 7 T. R. 81, Lord Kenyon says, “ it was in order to avoid so unjust a measure” by either party, “ that so long ago as the time of the Year Books, it was held that a general occupation was an occupation from year to year, and that the tenant could not be turned out of possession, without reasonable notice to quit.” The course of husbandry must have defined the time of reasonable notice. When common interest had united common consent to the recognition of a definite notice, the courts, in adopting it as a rule, only enforced a law which custom had previously established. Accordingly, for the mutual interest and security of both parties, it has long been settled in -the English courts, that interests in land which anciently were estates at will, should be construed to be tenancies from year to year. In Timmins vs. Rowlinson, 3 Burr. 1609, Wilmot, J. says, “in the country, leases at will, in the strict legal notion of leases at will, being found extremely inconvenient, exist only notionally, and were succeeded by another species of contract which was less inconvenient. At first it was indeed settled to be for a year certain ; and then the landlord might turn the tenant out at the end of the year. It is now established, that if a tenant takes from year to year, either party must give a reasonable notice before the end of the year, though that reasonable notice varies, according to the customs of different counties.” A tenant, then, takes from year to year, when he enters at an annual rent, without any agreement for a year or other specific time ; and either party must give reasonable notice before the end of the year. When there is an agreement for a tenancy for a year, and, by consent of both parties, the tenant continues in possession afterwards, the law implies a tacit renovation of the contract. They are presumed to have renewed the old agreeement, which was to hold for a year. If the time be stipulated, whether for a year or a less period of time, no notice is necessary to determine the tenan- „ cy, because the parties, by the agreement, are apprised of its determination. If the occupation be for a less time *349 than a year, a'shorter notice than in case' of a tenancy from year to year, will be sufficient. The notice is to have relation to the tenancy — so that on taking by the month, a month’s notice to quit may be sufficient. Right vs. Darby, 1 T. R. 162 ; Doe vs. Hazell, 1 Esp. R. 94.
The legislation of our own State seems to be confirmatory of the common law. The Acts of 1808, 5 Stat. 565, and 1812, 5 Stat. 676, which were referred to by the plaintiffs’ counsel, only give landlords remedies against their tenants holding over after “ the legal determination of their estates leaving the question open, when and how they may be determined. The second section of the Act of 1817,- 6 Stat. 67, is declaratory of the common law, when it provides that every lease or written agreement for renting lands, shall end at the period therein stated, “ without it being obligatory on the tenant or the landlord to give the notice now required by law.” The first section of the, Statute of Frauds provides that all leases and terms for years, by parol, shall have the effect of leases at will only. In Clayton vs. Blakey, 8 T. R. 3, it was decided that the statute only operated to make void the term ; and that the agreement operated to create a tenancy from year to year. The third section of the Act of 1817 provides that no parol lease shall give the tenant a right of possession for a longer period than twelve months, and that all such leases shall be construed' to be for one year, unless it be stipulated for a shorter time. The clause is merely prohibitory of parol leases for a longer period than one year; and in avoiding the contract of the parties to the extent it would operate, makes it good for one year. If the Act be substituted for the agreement of the parties, so that such a tenancy is limited to one year, then no notice is necessary at the end of that year. ' But if the tenant, by mutual consent, continues in possession after the year is expired, the statute has left the liabilities and rights of the .parties as they are at common law, under the construction of the Statute of Frauds.
It is indispensable that tenancies should not unexpectedly be determined. The mischief that would follow must be prevented, either by a renewal of the contract at a con *350 venient time before the expiration of the tenancy, or its continuance must be implied, unless either party give notice of discontinuance. To require special agreements to be renewed before the expiration of every short term of tenancy, would be onerous in the extreme, and discourage, if not prevent, the occupation of lands and houses for short periods, which would be a public grievance. Ignorance and remissness would frequently leave one of the parties in the power of the other. The law which implies a tenancy for a definite period, when it has not been agreed on by the parties, and requires notice to dissolve the tenancy, is best suited to the habits of society, and is necessary to prevent surprise and oppression. It is sufficient for every purpose, that such tenancy may be dissolved by the landlord, on his giving notice to his tenant to quit; or by the tenant giving notice to the landlord of his intention to quit. This leaves each party in security, and guards the rights of both. If either party may determine the tenancy at his will, or on a short notice, at any period of the tenancy, the tenant of lands may be deprived of the crop he has planted, and the landlord-may have his land left vacant at a season of the year unsuitable for a crop, and thereby lose the rent of it for a considerable period. The tenant of a dwelling may be left houseless, at the mercy of his landlord, and the latter subjected to an unexpected vacancy of his property, and the loss that would ensue.
Reasonable notice for the determination of a tenancy from year to year, under the English decisions, is six months. In this case, three months is admitted to be the customary notice in Charleston. For tenancies of shorter continuance, which are generally of less valuable tenements, a shorter notice is required. In all, it will be found that the law requires no more than is necessary to enable the tenant to provide another dwelling, and the landlord to procure another tenant, before the tenancy ends, and thereby prevent embarrassment and loss. The same periods of notice apply with equal, if not greater advantage, to tenancies of land.
The difference between the habits and state of society *351 in England and in this State, well warrants the substitution of three for six months notice. A decree was rendered for the plaintiffs for one quarter’s rent. Consistently with the judgment of this court, it cannot be retained. It is therefore ordered, that the plaintiffs be non-suit.
Richardson, Evans, Butler and Wardlaw, JJ. concurred.